# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of July, two thousand twenty three.

PRESENT: Reena Raggi,
Richard C. Wesley,
Steven J. Menashi,
*Circuit Judges.*

_____

MSC MEDITERRANEAN SHIPPING COMPANY S.A.,

*Plaintiff-Appellee,*

v.                                                                   No. 22-406

AIRLIFT (U.S.A.), INC.,

*Defendant-Appellant,*

AIRLIFT MARINE SERVICES PVT LTD,

*Defendant.*

_____

1

*For Plaintiff-Appellee:*     Jon Werner (Randolph H. Donatelli, *on the brief*), Lyons & Flood, LLP, Great Neck, NY.

*For Defendant-Appellant:*     Marc I. Kunkin, Casey & Barnett, LLC, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Cronan, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

This appeal concerns the scope of an indemnity provision in a bill of lading that governs the relationship between the parties. Plaintiff-Appellee MSC Mediterranean Shipping Company ("MSC") is an ocean common carrier. Defendant-Appellant Airlift U.S.A. ("Airlift") is a non-vessel-operating common carrier. Airlift contracted with MSC for the carriage of granite slabs from India to New York. After arriving in New York, the slabs ultimately were delivered to Elite Stone Importers in New Jersey. An employee of Elite Stone Importers, Brian Diver, was crushed as he unloaded the cargo from an MSC container. Diver sought damages for his injuries in a lawsuit in New Jersey state court against defendants including MSC and Airlift. Prior to trial, Diver and MSC reached a settlement. Before that settlement, MSC had sued Airlift in federal district court, seeking a declaration that Airlift was required to indemnify it for the amounts it might pay to Diver and the costs it would incur in defending itself in New Jersey state court. Following a bench trial on a submitted record, the district court determined that MSC was entitled to full contractual indemnity from Airlift under the bill of lading. *See MSC Mediterranean Shipping Co. S.A. v. Airlift Marine Servs. PVT Ltd.*, 579 F. Supp. 3d 484 (S.D.N.Y. 2022). The district court awarded damages to MSC of $888,692.81, plus $44,392.03 in prejudgment interest. On February 2, 2022, the district court issued its judgment against Airlift, and Airlift filed a timely notice of

appeal. We assume the parties' familiarity with the underlying facts and procedural history.

When considering a district court's decision following a bench trial, we review conclusions of law as well as mixed questions of law and fact *de novo* and findings of fact for clear error. *Atl. Specialty Ins. Co. v. Coastal Env't Grp. Inc.*, 945 F.3d 53, 63 (2d Cir. 2019). Airlift advances two arguments in its challenge to the district court's award: (1) that the bill of lading's terms and conditions were inapplicable at the time of Diver's injuries and (2) that MSC failed to meet its burden of proving it was potentially liable for the full amount of the damages to Diver. We disagree and affirm the judgment of the district court.

**I**

"A bill of lading is a document normally issued by [a] shipowner when goods are loaded on its ship, and may, depending on the circumstances, serve as a receipt, a document of title, a contract for the carriage of goods, or all of the above." *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 823 (2d Cir. 2006); *see also* Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* 93 (2d ed. 1975). Airlift argues that, regardless of whether the bill of lading provided for indemnification, the bill of lading was no longer applicable at the time Diver was injured while unloading the container in New Jersey. Airlift points to language in the bill of lading declaring the contract to be "subject to all the terms and conditions hereof from the Place of Receipt or Port of Loading to the Port of Discharge or Place of Delivery, whichever is applicable." App'x 128. According to Airlift, it contracted with MSC only for services involving transportation from India to the port in New York. Because Elite Stone Importers made its own arrangements for the transportation of the container from the port in New York to the facility in New Jersey, Airlift maintains that the contract between Airlift and MSC was no longer applicable at the time Diver was injured in New Jersey.

As the district court noted, however, several clauses in the bill of lading—including Clauses 11.1, 11.3, 14.8, 14.9, and 20.4—"plainly cover events that would occur outside of the period of delivery to the port in New York" because those

clauses "regulate conduct outside of the period of carriage 'from the Place of Receipt or Port of Loading to the Port of Discharge or Place of Delivery.'" *MSC*, 579 F. Supp. 3d at 495. The district court explained that "Airlift USA's reading would nullify" these clauses. *Id*. Because we "must avoid an interpretation of an agreement that renders one of its provisions superfluous," *United States v. Int'l Broth. of Teamsters*, 970 F.2d 1132, 1136 (2d Cir. 1992), we agree with the district court that the bill of lading continued to apply when the cargo was delivered.[1]

## II

To determine whether the bill of lading required Airlift to indemnify MSC for the damages it paid to Diver after settling the New Jersey case, the parties agree that we must look to *Atlantic Richfield Company v. Interstate Oil Transport Company*, 784 F.2d 106 (2d Cir. 1986). Under the *Atlantic Richfield* framework, before agreeing to a settlement, an indemnitee must give the indemnitor the opportunity to approve the settlement or to defend the case. *Id*. at 113. "If the indemnitor declines either to approve the settlement or to take over the defense, the indemnitee is required to prove only its *potential liability* to the plaintiff" to recover for the settlement. *Id.* (emphasis added). But "[w]here notice—which includes a meaningful opportunity to assume the defense—is lacking, a demonstration of *actual liability* is required." *Id.* (emphasis added). In this case, before agreeing to the settlement, MSC provided Airlift the opportunity to approve the settlement with Diver or to assume the defense of the lawsuit. App'x 86-87. Therefore, MSC needed to show only that it was *potentially*—not actually—liable to Diver in the New Jersey case to be entitled to indemnification from Airlift.

The indemnification provision of the bill of lading provided as follows:

11.4 The Merchant [Airlift] shall indemnify the Carrier [MSC] against any loss, damage, liability or expense whatsoever and howsoever arising caused by one or more of the matters referred to in clause 11.2,

---

[1] Moreover, the bill of lading covered the packing of the cargo in the container. App'x 138-39. Because Diver sought recovery for injuries allegedly caused by the packing of the cargo and the use of the container, his lawsuit implicated conduct to which the bill of lading expressly applied.

including but not limited to damage to Container, other cargo and the
Vessel.

*Id.* at 139. Clause 11.2, in turn, provided:

11.2 The Carrier shall not be liable for loss of or damage to the Goods
caused by:

(a) the manner in which the Goods have been packed, stowed, stuffed
or secured in the Container, or

(b) the unsuitability of the Goods for carriage in the Container
supplied or for carriage by Container between the Ports or Places
specified herein, or

(c) the unsuitability or defective condition of the Container or the
incorrect setting of any refrigeration controls thereof, provided that,
if the Container has been supplied by or on behalf of the Carrier, this
unsuitability or defective condition would have been apparent upon
inspection by the Merchant at or prior to the time when the Container
was packed.

*Id.* at 138.

Before conducting the *Atlantic Richfield* inquiry into the potential liability of
MSC to Diver, the district court thought it needed to determine "whether the cause
of Diver's accident falls within the Bill of Lading's indemnity provision at clause
11.4," which, in turn, depended on "whether MSC's liability to Diver was 'caused
by one or more of the matters referred to in clause 11.2.'" *MSC*, 579 F. Supp. 3d at
496-97. Surveying the evidence from the New Jersey state case, the district court
considered three theories of causation for Diver's injuries that had arisen in the
New Jersey litigation: (1) the poor packing of the slabs in the container, (2) a defect
in the floor of the shipping container, and (3) an unstable chassis supporting the
shipping container. After hearing testimony from expert witnesses and from Diver
and his co-worker, the district court concluded that the poor packing of the goods
was an actual and proximate cause of Diver's injuries, placing Diver's injuries

within the scope of indemnification under Clause 11.4 because the matters in Clause 11.2 included "the manner in which the Goods have been packed, stowed, stuffed or secured in the Container." App'x 138. In reaching that conclusion, the district court seemed also to conclude that, in its estimation, neither the defective condition of the container floor nor the chassis failure was the actual or proximate cause. *See MSC*, 579 F. Supp. 3d at 497.

The district court conducted a separate analysis to determine whether MSC had met its burden under *Atlantic Richfield* to show that it was potentially liable to Diver in the New Jersey litigation such that it could recover settlement costs as an indemnitee of Airlift. According to the district court, because MSC neither packed the container nor provided the chassis, the potential liability question turned on whether a jury could have concluded that the floor of MSC's container was defective and contributed to Diver's injuries. The district court decided that MSC met its burden of showing its potential liability in the New Jersey litigation because the record contained "conflicting testimony on whether the container floor was defective, and, if so, whether that defect played a role in the injury." *Id.* at 498.

### III

On appeal, Airlift emphasizes the tension between (1) the district court's finding that improper packing was the actual cause of Diver's injuries, a finding the district court made to determine whether the indemnification provision applied on its own terms, and (2) the district court's finding that MSC was potentially liable to Diver because of the allegedly defective floor in the container, a finding the district court made to determine whether MSC was entitled to indemnification as a matter of equity under *Atlantic Richfield*.

Although we discern no error in the district court's analysis, we agree with the parties that the district court did not need to determine the actual cause of

Diver's injuries.[2] The district court did not need to survey the evidence from the New Jersey case and make a finding regarding the actual cause of Diver's injuries. In order to trigger the indemnification provision in the bill of lading, MSC needed to show (1) that it was potentially liable to Diver in the New Jersey case and (2) that the source of that potential liability was one contemplated by the indemnification provision. We held in *Atlantic Richfield* that, to recover from the indemnitor, the indemnitee first must give the indemnitor the opportunity to approve the settlement or defend the case. *See Atl. Richfield*, 784 F.2d at 113. "If the indemnitor declines either to approve the settlement or to take over the defense, the indemnitee is required to prove *only* its potential liability to the plaintiff" in the action. *Id.* (emphasis added). The potential liability must be a source of liability contemplated by the indemnity provision—and here that requires taking account of what the jury could potentially determine was the cause of the loss or liability— but the indemnitee was not required to prove the actual cause in a collateral proceeding in order to receive indemnification.

Applying the proper test, it becomes clear that MSC is entitled to indemnification. First, MSC attempted to tender its defense to Airlift and notified Airlift of its settlement with Diver. Second, as the district court found, MSC was potentially liable to Diver in the New Jersey litigation because of the defective container floor.[3] Third, that potential liability triggered an indemnification obligation because it implicated "one or more of the matters referred to in clause 11.2" of the bill of lading, which include both "the unsuitability or defective

---

[2] *See* Oral Argument Audio Recording at 11:56 (Counsel for Airlift stating "I don't believe the district court had to make a finding of actual liability, but the district court did"); *id.* at 14:51 (Counsel for MSC stating "[T]he actual causation analysis [by the district court] should have focused on what actually caused MSC to suffer a loss, not necessarily what actually caused Mr. Diver's injuries").

[3] In his Fourth Amended Complaint, Diver alleged that MSC "had owned and maintained the … container in such a negligent, reckless and careless manner as to cause … [the container] to be unsafe for its intended purpose leaving the … granite and/or marble to be unsecured and uneven and *improperly packed*." App'x 118 (emphasis added). Accordingly, the defective container might have been a cause of the injury itself or it might have contributed to the poor packing of the cargo.

condition of the Container" and "the manner in which the Goods have been packed, stowed, stuffed or secured in the Container." App'x 138-39.

Furthermore, as the district court observed, New Jersey law allows for the possibility of unapportioned damages, so MSC faced the possibility of paying the entirety of Diver's damages on behalf of all the defendants if it had been found at least sixty percent liable. *See MSC*, 579 F. Supp. 3d at 498.

Airlift suggests that the defective container floor was a latent defect and therefore would not trigger an indemnification obligation because Clause 11.2 provides that "[t]he Carrier shall not be liable for loss of or damage to the Goods caused by" the defective condition of the container "provided that, if the Container has been supplied by or on behalf of the Carrier, this unsuitability or defective condition would have been apparent upon inspection by the Merchant at or prior to the time the Container was packed." App'x 138-39. The record on appeal indicates that the defect was noticeable, at least when the container was unpacked in New Jersey. *See, e.g.*, *id.* at 271 (35:3-11) (testimony of Diver that the "seams were uneven" on the container floor and the floor was "spongy"); *id.* at 790 (248:19-23) (testimony that a coworker "told Brian Diver to be careful because the floor was not in great condition").[4]

Because MSC demonstrated that it was potentially liable to Diver—and that a source of its potential liability was contemplated by the bill of lading's indemnification provisions—we conclude that the district court correctly determined that indemnification was required.

\* \* \*

---

[4] In addition, Diver alleged that the defective container contributed to the poor packing of the cargo. *See supra* note 3.

We have considered Airlift's remaining arguments, which we conclude are without merit. We affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court